UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Kevin Williams, et al.,                                Case No. 3:13CV893

            Plaintiffs,

    v.                                                      MEMORANDUM OPINION
                                          AND ORDER

Lisa A. Everman, et al.,

            Defendants.

The United States of America, on behalf of defendants the United States Department of

Agriculture, along with Lisa Everman and Ronald Raitz, in their individual and official capacities,

have moved to dismiss the complaint of Plaintiffs Kevin Williams and Frances Annada Williams for

lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

Fed. R. Civ. P. 12(b)(1) and (b)(6).  (Doc. 12).  The plaintiffs have filed a response (Doc. 17) and the

defendants have filed a reply.  (Doc. 19).

### I.  Jurisdiction and Venue

The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1361, and 1367.

Venue is properly before this Court under 28 U.S.C. § 1391 and N.D. Ohio R. 3.8.

### II.  Lack of Subject Matter Jurisdiction

The defendants have moved to dismiss the complaint for lack of subject matter jurisdiction

pursuant to Rule 12(b)(1).  Challenges to subject matter jurisdiction are classified as facial or factual

attacks.  *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012).  "A facial attack is a

challenge to the sufficiency of the pleading itself."  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.

1994) (emphasis omitted).  When evaluating a facial attack, the district court takes the allegations in the complaint as true, and if those allegations establish federal claims, then jurisdiction exists.  *Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).  A factual attack "is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *Ritchie*, 15 F.3d at 598.  When a factual dispute arises, "the district court must . . . weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist."  *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  A district court "has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts."  *Id.*

### III.  Failure to State a Claim

The defendants have also moved to dismiss the complaint for failure to state a claim under Rule 12(b)(6).  "In assessing a motion to dismiss under Rule 12(b)(6), [a] court construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (alteration in original).  "A plaintiff's complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Courts are not required to accept as true legal conclusions couched as factual allegations.  *See Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere

2

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alterations in original).

## IV. FACTS

Kevin Williams, and his mother Frances Annada Williams, entered into four Conservation Reserve Program (CRP) contracts with the United States Department of Agriculture (USDA) which are the subjects of this dispute. Kevin Williams possess his mother's power of attorney to enter into CRP contracts. The contracts are identified as Contract #1183, #1192B, #1005, and #1282. The contracts provided for rental payments to the plaintiffs as long as they complied with the terms and conditions of the contracts. Contracts #1183, #1192B, and #1005 were terminated due to the plaintiffs' failure to comply with the terms and conditions of the contracts.

On April 19, 2013, the plaintiffs filed suit alleging a violation of 42 U.S.C. § 1985(3). In Count I, the plaintiffs state that Everman and Raitz "engaged in a conspiracy for the purpose of depriving plaintiffs, either directly or indirectly, the equal protection of the laws." (Doc. 1, ¶ 50). The plaintiffs also allege that "[t]here was a class-based, invidious discriminatory animus behind Everman's and Raitz's actions as set out in this Complaint. This includes but is not limited to Everman's and Raitz's hatred and contempt toward the [p]laintiffs because of [p]laintiffs' strong support and belief in returning farmland to its natural habitat." (Doc. 1, ¶ 52).

In Count II, the plaintiffs allege a violation of the First, Fifth, and Fourteenth Amendments to the Constitution. Specifically, the plaintiffs claim the defendants "violated plaintiffs' rights pertaining to freedom of speech, the right to assemble, and the right to petition the government for redress of grievances under the First Amendment to the United States Constitution." (Doc. 1, ¶ 54). The plaintiffs further allege "[t]he actions of defendants violated plaintiffs' rights not to be deprived of liberty, which includes injury to reputation, and property without due process of law and not to

3

have their private property taken for public use without just compensation under the Fifth

Amendment to the United States Constitution." (Doc. 1, ¶ 55). Finally, the plaintiffs allege:

> Defendants' conduct as set out in this Complaint subjected plaintiffs to
> discrimination that is so unjustifiable as to be violative of due process. The
> classification plaintiffs were subjected to was invalid under the equal protection
> clause of the Fourteenth Amendment to the United States Constitution. Thus, it is
> also inconsistent with the due process requirements of the Fifth Amendment.
> Plaintiffs were intentionally treated differently from others similarly situated and
> there was no rational basis for the difference in treatment.

(Doc. 1, ¶ 56).

Although the plaintiffs seek monetary, declaratory, and injunctive relief, they specifically seek

an order directing the "defendants to stop their pattern of harassment and retaliation against

plaintiffs, including the following: defendants obey the decision of the NAD [National Appeals

Division of the United States Department of Agriculture]; defendants take all steps necessary to stop

the withholding of any of F. A. Williams' social security and CRP #1282 contract payments;

defendants fully reinstate CRP contracts 1005, 1183, and 1192B." (Doc. 1 Prayer for Relief, ¶ 2).

The CRP is a land conservation program administered by the Farm Service Agency (FSA).

*See generally* 16 U.S.C. §§ 3801–36; 7 C.F.R. §§ 1410.1–.64. According to the defendants, farmers

who are enrolled in a CRP program agree to remove environmentally sensitive land from agricultural

production and plant species that will improve the environment. Such contracts are for ten to

fifteen years, with the goal of helping improve water quality, preventing soil erosion, and preventing

loss of wildlife habitat. (Doc. 12, p. 6).

The program is supervised by the Executive Vice President of the Commodity Credit

Corporation (CCC), the Administrator of the FSA or designee, or the Deputy Administrator of the

FSA. 7 C.F.R. § 1410.1(a). The field program is supervised by the FSA state and county

committees. *Id.* Seven C.F.R. § 1410.3 states:

(a) Under the CRP, CCC will enter into contracts with eligible participants to convert eligible land to a conserving use during the contract period in return for financial and technical assistance.

(b) A participant must obtain and adhere to a conservation plan prepared in accordance with CRP guidelines, as established and determined by CCC. A conservation plan for eligible acreage must be obtained by a participant and must be approved by the conservation district in which the lands are located unless the conservation district declines to review the plan, in which case the provider of technical assistance may take such further action as is needed to account for lack of such review.

(c) The objectives of the CRP are to cost-effectively reduce water and wind erosion, protect the Nation's long-term capability to produce food and fiber, reduce sedimentation, improve water quality, create and enhance wildlife habitat, and other objectives including, as appropriate, addressing issues raised by State, regional, and national conservation initiatives and encouraging more permanent conservation practices, such as, but not limited to, tree planting.

### A. Contract #1183

On September 13, 2004, Kevin Williams, on behalf of his mother, entered into a CRP contract identified as Contract #1183. The contract was effective from October 1, 2005, through September 30, 2015. The contract required the plaintiffs to restore and conserve rare or declining native vegetation and associated wildlife on the land.

On July 21, 2009, the FSA notified the plaintiffs of a substantial amount of Canada thistle on the CRP acreage. On July 1, 2010, Everman, as county Executive Director for the Seneca County FSA Committee, wrote the plaintiffs to state that "[a]fter a field visit on June 1, 2010 there was no evidence that you have sprayed or tried to control the thistle." Everman informed the plaintiffs that, within fifteen calendar days, the plaintiffs were to either submit a written explanation for their default or correct the default. On July 16, 2010, Kevin Williams submitted a handwritten letter explaining the default.

5

On September 30, 2010, the Seneca County committee notified the plaintiffs it terminated the contract for failure to make a good faith effort to comply with the contract's terms and conditions. The county committee determined the weeds were not controlled in the designated area. The plaintiffs were notified of their right to appeal in accordance with the procedures found in 7 C.F.R. Part 11.

On October 28, 2010, the plaintiffs requested reconsideration by the county committee. After conducting a hearing on November 18, 2010, the county committee denied the request for reconsideration on December 8, 2010. On January 10, 2011, the plaintiffs appealed the county committee's decision to the FSA state committee. The state committee met with Kevin Williams on March 10, 2011. On March 24, 2011, the FSA State Executive Director notified the plaintiffs the state committee agreed with the county committee's decision to terminate the contract.

The plaintiffs then appealed the decision to the NAD. The NAD determined that the plaintiffs' failure to control the Canada thistle and other weeds violated the terms of the contract. The NAD also determined that the county committee had failed to consider "the appropriate facts and information . . . finding a lack of good faith by [the plaintiffs]." The NAD found the county committee did not consider Kevin Williams's July 16, 2010 letter explaining the actions the plaintiffs took to comply with the contract. The basis for this finding was because Williams's letter was missing from the record. Therefore, the NAD hearing officer determined the county committee's finding that the plaintiffs engaged in bad faith was not supported by the evidence.

On October 26, 2011, as a result of the NAD decision, the county committee sent the plaintiffs a letter allowing the plaintiffs fifteen days to provide a written explanation showing their good faith effort to comply with the contract. No response was received until July 16, 2012. In a letter dated July 20, 2012, the county committee notified the plaintiffs that it had considered the

plaintiffs' response.  The county committee determined:

> The approved cover has not been maintained according to the conservation plan.
> The designated acres have <u>not</u> been mowed to control noxious weeds or severe weed
> infestations.  The entire designated acreage has <u>not</u> been sprayed nor was the
> designated acreage sprayed timely.

(emphasis in original).  Therefore, the county committee found the plaintiffs had failed to make a

good faith effort to comply with the contract.

On August 10, 2012, the plaintiffs sought reconsideration of the county committee's

decision.  On August 22, 2012, the plaintiffs were informed that the county committee would meet

on September 11, 2012, to review the reconsideration request.  The plaintiffs did not attend the

meeting.  On October 1, 2012, the county committee notified the plaintiffs it had decided to uphold

its decision of July 20, 2012.

On October 31, 2012, the plaintiffs sent the county committee a letter which the committee

construed as a request for reconsideration.  The county committee sent an acknowledgment on

November 5, 2012.  On December 21, 2012, the county committee decided the termination of

Contract #1183 was factually correct and was done in accordance with procedure.  The county

committee found "[t]he termination of [C]ontract #1183 was a direct result of the participants'

failure to address numerous compliance issues brought to your attention over a span of three years."

The county committee, however, also decided to "give Mr. Williams as POA [power of attorney]

[the] opportunity to meet with NRCS [USDA Natural Resources Conservation Service] personnel

on site and then to amend the current conservation plan to incorporate practices to achieve

compliance on the required cover."  After a review, "[i]f the acreage is in compliance the [county

committee] will determine good faith and reinstate the contract."

On January 30, 2013, the plaintiffs requested mediation of the county committee's findings

in relation to Contract #1183.  On February 1, 2013, the FSA state office acknowledged receipt of the plaintiffs' request for mediation.

### B.  Contract #1192B

On September 12, 2004, the plaintiffs signed a CRP contract which is identified as Contract #1192B.  On October 6, 2010, the county committee notified the plaintiffs their land was not in compliance.  According to the county committee, "[n]o response was received from the participant and the area was re-inspected on June 22, 2011 by NRCS and FSA personnel and found no action had been completed."  On September 23, 2011, plaintiffs were "again notified of the noncompliance state and that the defaults must be corrected and an explanation of the defaults submitted to the [county committee] by October 14, 2011."  The plaintiffs submitted a response on October 31, 2011, after having been granted an extension of time, indicating the land was in compliance.  A re-visit, however, showed "no maintenance or compliance activities had been performed since the June 2011 visit."

On July 16, 2012, the contract was terminated.  The plaintiffs requested reconsideration on August 14, 2012, but the termination was upheld on September 11, 2012.  The county committee determined "no additional information was submitted prior to the meeting and the participant was not in attendance."  The plaintiffs again requested reconsideration on October 1, 2012.  A meeting was set for December 13, 2012.  On December 13, 2012, the county committee determined the "termination of [C]ontract #1192B was a direct result of the participants' failure to address numerous compliance issues brought to your attention through a 21 month time period."  In the letter of December 13, 2012, the plaintiffs were informed of their administrative appeal rights.

### C.  Contract #1005

On July 8, 2003, the plaintiffs signed a CRP contract which is identified as Contract #1005.

On October 6, 2010, the county committee notified the plaintiffs their land failed to comply with the contract.  The county committee "requested that undesirable woody vegetation be removed prior to March 1, 2011 and the NRCS/FSA to be notified of the completion."  According to the county committee, "[n]o response was received from the participant and the area was re-inspected on June 22, 2011 by NRCS and FSA personnel and found no action had been completed."  Additionally, "encroachment by the tenant and chemical application had eliminated acreage coverage."

On September 23, 2011, the plaintiffs were "again notified of the noncompliant state and that the defaults must be corrected and an explanation of the defaults submitted to the [county committee] by October 14, 2011."  The plaintiffs submitted a response on October 31, 2011, after having been granted an extension of time, indicating their land was in compliance.  A re-inspection of the land, however, showed "no major maintenance or compliance activities had been performed since the June 2011 visit."

On July 16, 2012, the plaintiffs' contract was terminated.  The plaintiffs requested reconsideration on August 14, 2012, but the termination decision was upheld on September 11, 2012.  The county committee determined "no additional information was submitted prior to the meeting and the participant was not in attendance."  The plaintiffs again requested reconsideration on October 1, 2012.  On December 13, 2012, the county committee determined the "termination of [C]ontract #1005 was a direct result of the participants' failure to address numerous compliance issues brought to your attention through a 21 month time period."  In the letter of December 13, 2012, the plaintiffs were informed of their administrative appeal rights.

### D.  Contract #1282

Contract #1282 has not been terminated.  The plaintiffs, however, allege "F. A. Williams'

other CRP contract - contract #1282, consisting of 15.5 acres with an annual cash rental payment of $1525.00, is also being confiscated by the FSA against the account receivable set up by the Seneca County FSA due to the charge backs levied against her CRP contract #1183."

V.  Subject Matter Jurisdiction

This case presents a jurisdiction issue which has yet to be addressed by the United States Court of Appeals for the Sixth Circuit.  A suit against a federal agency, agents, or officials of the United States in their official capacities is a suit against the United States.  *See* 28 U.S.C. § 2674.  The United States is immune from suit except where it waives its sovereign immunity. The waiver of sovereign immunity relating to claims against the USDA is set forth in 7 U.S.C. § 6912(e).  Section 6912(e) provides:

> Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against —
>> (1) the Secretary;
>>
>> (2) the Department; or
>>
>> (3) an agency, office, officer, or employee of the Department.

7 U.S.C. § 6912(e).

"A final determination of the Division shall be reviewable and enforceable by any United States district court of competent jurisdiction in accordance with chapter 7 of Title 5."  7 U.S.C. § 6999.

The United States asserts that this Court lacks subject matter jurisdiction over this action because the plaintiffs have failed to exhaust their available administrative remedies.  The government concedes the federal courts of appeals are split as to whether § 6912(e) creates a jurisdictional exhaustion provision.  The Second Circuit has stated:

> In general, exhaustion of administrative remedies is the rule, and waiver the exception, because exhaustion serves myriad purposes, including limiting judicial

interference in agency affairs, conserving judicial resources, and preventing the "frequent and deliberate flouting of administrative processes [that] could weaken the effectiveness of an agency." *McKart v. United States*, 395 U.S. 185, 193–95 (1969); *see also Pavano v. Shalala*, 95 F.3d 147, 150 (2d Cir. 1996). Exhaustion also allows the agency to develop the factual record of the case, which aids such judicial review as may be available. *See James v. United States Dep't of Health & Human Servs.*, 824 F.2d 1132, 1137–38 (D.C. Cir. 1987).

Two kinds of exhaustion doctrine are currently applied by the courts, and the distinction between them is pivotal. Statutory exhaustion requirements are mandatory, and courts are not free to dispense with them. Common law (or "judicial") exhaustion doctrine, in contrast, recognizes judicial discretion to employ a broad array of exceptions that allow a plaintiff to bring his case in district court despite his abandonment of the administrative review process.

The Supreme Court has directed that "[w]here Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (internal citations omitted). With regard to cases governed by the Administrative Procedure Act ("APA"), such as the case at bar, the Supreme Court has instructed that if Congress has not enacted an explicit exhaustion requirement, courts may not exercise their judicial discretion to impose one. *See Darby v. Cisneros*, 509 U.S. 137, 153–54 (1993). However, even in APA-governed cases, if the statute at issue explicitly mandates exhaustion as a prerequisite to judicial review, it must be enforced. *See id.*

Faced with unambiguous statutory language requiring exhaustion of administrative remedies, "[w]e are not free to rewrite the statutory text." *McNeil v. United States*, 508 U.S. 106, 111 (1993). Only in the absence of an explicit statutory exhaustion requirement may courts exercise discretion and "balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy*, 503 U.S. at 146. *See also id.* at 152, 112 S. Ct. 1081 ("Because Congress has not required exhaustion . . . we turn to an evaluation of the individual and institutional interests at stake in this case.") (emphasis added); *Garrett v. Hawk*, 127 F.3d 1263, 1265 (10th Cir.1997); *Portela-Gonzalez v. Secretary of the Navy*, 109 F.3d 74, 77 (1st Cir.1997) ("[E]xhaustion of administrative remedies is absolutely required if explicitly mandated by Congress.").

*Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998).

In contrast, the United States Court of Appeals for the District of Columbia has found the exhaustion provision of § 6912(e) is nonjurisdictional and failure to exhaust available administrative remedies does not deprive a district court of jurisdiction to entertain the case. *Munsell v. Dep't of Agric.*, 509 F.3d 572, 580–81 (D.C. 2007) (citing decisions from the Fifth, Eighth, and Ninth

Circuits). In addressing *Bastek*, the *Munsell* court stated:

> The District Court relied primarily on a Second Circuit decision in *Bastek v. Federal Crop Insurance Corp.*, 145 F.3d 90 (2d Cir. 1998), for authority that § 6912(e) creates a jurisdictional requirement. *Bastek*, however, did not hold that § 6912(e) is jurisdictional. Rather, that decision merely held that § 6912(e) was sufficiently explicit to make the exhaustion requirement mandatory. *Bastek*, 145 F.3d at 94–95; *see also Ace Prop.*, 440 F.3d at 999. This is not the same as holding that the provision is jurisdictional, because an exhaustion requirement can be both mandatory and nonjurisdictional. *See Ngo*, 126 S.Ct. at 2392–93.
>
> In sum, we find that the 1994 Reorganization Act did not create a jurisdictional bar to judicial review of USDA actions. Rather, § 6912(e) establishes a mandatory, but nonjurisdictional, exhaustion requirement. There is no clear, sweeping, or direct language within the 1994 Reorganization Act that would indicate a congressional intent to create a jurisdictional limit on the courts. Under *Arbaugh* and *Avocados Plus*, absent a clear statement from Congress, exhaustion requirements will be found to be nonjurisdictional. Accordingly, we reverse the decision of the District Court and hold that there is subject matter jurisdiction over this case under 28 U.S.C. § 1331.

*Id.* at 581.

The government urges the adoption of the Second Circuit's position to support its motion to dismiss under Rule 12(b)(1). The plaintiffs argue *Bastek* should be rejected and *Munsell* provides the correct analysis.

Although the issue has not been addressed by the Sixth Circuit, this district addressed the question in *Gilmer–Glenville, Ltd. v. Farmers Home Admin.*, 102 F. Supp. 2d 791 (N.D. Ohio 2000). In *Gilmer–Glenville Ltd.*, Judge Gwin stated:

> The APA [Administrative Procedures Act] provides that any agency action made reviewable by statute is subject to judicial review thereunder. *See* 5 U.S.C. § 704. Under 7 U.S.C. § 6999, actions by the USDA are subject to judicial review. However, a party seeking to challenge a USDA action must first file an appeal with the National Appeals Division ("NAD"). *See* 7 U.S.C. § 6912(e). Once the NAD rules on the appeal, the party may seek judicial review of the NAD's ruling. *See* 7 U.S.C. § 6999.
>
> [T]he failure to exhaust administrative remedies in this context is not an affirmative defense, but rather a jurisdictional requirement to filing suit in federal court. When Congress establishes an exhaustion requirement in a particular statute, the requirement is jurisdictional. *See I.A.M. Nat'l Pension Fund Benefit Plan C v.*

12

> *Stockton Tri Indus.*, 727 F.2d 1204, 1208 (D.C. Cir. 1984) (stating that exhaustion is a jurisdictional prerequisite only by explicit congressional mandate). Here, Congress has decided that a person must exhaust "all administrative appeal procedures . . . required by law before the person may bring an action in a court of competent jurisdiction" against the USDA. 7 U.S.C. § 6912(e); *Calhoun v. USDA Farm Service Agency*, 920 F. Supp. 696, 701–02 (N.D. Miss.1996) (finding that exhaustion is a jurisdictional prerequisite to suits against USDA). Thus, the Court will only review those USDA actions that Gilmer–Glenville has already challenged with the NAD.

*Gilmer–Glenville, Ltd.*, 102 F. Supp. 2d at 793–94.

The plain language of the statute requires a plaintiff exhaust available administrative remedies before filing a complaint against the USDA. Further, to avoid a conflict in this district, I conclude § 6912(e) requires plaintiffs exhaust their available administrative remedies regarding each contract in question before this Court has subject matter jurisdiction over the contracts.

## VI. Exhaustion

The facts establish that the plaintiffs have not exhausted their available administrative procedures by appealing the termination of Contracts #1192B and #1005 up to the NAD. Therefore, the Court lacks subject matter jurisdiction regarding the termination of these contracts. *See* 7 U.S.C. § 6999; *Bastek*, 145 F.3d at 94; *Gilmer–Glenville, Ltd.*, 102 F. Supp. 2d at 793–94.

Contract #1282 has not been terminated. Although the plaintiffs state the funds they would normally receive from this contract are being taken to pay the debt they owe under Contract #1183, the integrity of Contract #1282 is not contested. Further, any challenge the plaintiffs may have as to Contract #1282 has not been presented in any administrative proceeding. Thus, the Court lacks subject matter jurisdiction to any challenge the plaintiffs have regarding Contract #1282. *See* 7 U.S.C. § 6999; *Bastek*, 145 F.3d at 94; *Gilmer–Glenville, Ltd.*, 102 F. Supp. 2d at 793–94.

Regarding Contract #1183, the plaintiffs argue the NAD's decision establishes they have exhausted their administrative remedies as to this contract. In addition, the plaintiffs state that they

13

actually won before the NAD and they are entitled to an order enforcing the NAD's decision. This argument forms the basis for their request in their brief to amend the complaint to add a third claim against the defendants.

The record establishes the plaintiffs appealed the termination of Contract #1183 to the NAD. In his decision of August 24, 2011, the hearing officer found that the plaintiffs had failed to control Canada thistle and other weeds on the CRP acreage. Thus, the officer found the plaintiffs to be in breach of contract. Despite this determination, the hearing officer found the record did not support the county committee's finding that the plaintiffs' actions lacked good faith. The hearing officer stated that the county committee must determine whether a participant made a good faith effort to comply with the terms of the CRP contract. The FSA acknowledged before the hearing officer that it received a letter from Kevin Williams explaining the actions he had taken to correct the FSA's concerns. The letter, however, was not in the file before the NAD, nor did the FSA have a copy of the letter in its possession. Because the FSA could not produce Kevin Williams's letter, the hearing officer found the county committee's good faith determination was not supported by the record. Accordingly, the hearing officer found the FSA's good faith determination to be erroneous. (Doc.12-2, p. 251).

Following the NAD decision, the county committee sent the plaintiffs a letter, dated October 26, 2011, offering the plaintiffs an additional opportunity to submit a letter, or to appear in person to explain why they were in default regarding Contract #1183. (Doc. 12-2, p. 68). After several letters between the plaintiffs and the county committee, the plaintiffs filed a request for mediation on January 30, 2013. (Doc. 12-2, p. 296).

Although plaintiffs assert they have no further remedies to exhaust regarding Contract #1183 and they won before the NAD, the evidence establishes the contrary. The record shows the

parties are in mediation regarding Contract #1183. Further, the NAD decision establishes that by failing to control the Canada thistle and other weeds, the plaintiffs breached the contract. What the NAD decision did find, however, was the county committee's decision regarding bad faith by the plaintiffs was not supported by the evidence because the plaintiffs' July 16, 2010 letter explaining their default was not in the record. The NAD decision simply found the good faith determination by the county committee was erroneous. The plaintiffs were still found to be in breach of the contract.

In addition, mediation is available only after an adverse decision, but before an appeal of the adverse decision to the NAD. 7 C.F.R. § 780.9. Thus, by regulation, if the plaintiffs are in mediation, they have not made a final appeal to the NAD. If the plaintiffs believe, as they appear to do now, that they have exhausted their administrative remedies as a result of the NAD decision, the plaintiffs should have sought judicial review under § 6999. It is illogical for the plaintiffs to engage in further administrative procedures if they felt the NAD decision resolved the dispute. As previously noted, the NAD decision only resolved the good faith issue. The decision did not resolve the breach of contract claim in plaintiffs' favor. Therefore, the plaintiffs have not exhausted their available administrative remedies regarding Contract #1183 and this Court lacks subject matter jurisdiction to entertain plaintiffs' complaint. *See* 7 U.S.C. § 6999; *Bastek*, 145 F.3d at 94; *Gilmer–Glenville, Ltd.*, 102 F. Supp. 2d at 793–94.

I note Everman and Raitz were sued in their official and individual capacities. Regarding the plaintiffs' suit against these defendants in their official capacities, the action is deemed as a suit against the United States. 28 U.S.C. § 2674. Therefore, the official capacity portion of plaintiffs' lawsuit against Everman and Raitz would be subject to the same exhaustion analysis. The individual capacity portion of the suit, however, would not be against the United States and would be subject

to review on the merits under the Rule 12(b)(6) portion of the current motion to dismiss.

### VII.  Merits of Claims

As previously discussed, the courts of appeals are split regarding whether the plaintiffs are required to exhaust their available administrative remedies before a district court has subject matter jurisdiction.  The Sixth Circuit has not addressed this issue.  If this case were appealed and the Sixth Circuit should find plaintiffs' failure to exhaust their administrative remedies would not deprive this Court of subject matter jurisdiction, I will address the merits of plaintiffs' claims for the purposes of judicial economy not only to Everman and Raitz in their individual capacities, but also to these defendants in their official capacities and the United States Department of Agriculture.  This will allow the Sixth Circuit the opportunity to affirm this decision on other grounds should the court disagree with the position of the Second Circuit on the issue of exhaustion.

### A.  42 U.S.C. § 1985(3) Claim

The plaintiffs allege in count one of their complaint that they have been the victims of discrimination in violation of 42 U.S.C. § 1985(3).  The plaintiffs alleged that Everman and Raitz engaged in a conspiracy for the purpose of depriving the plaintiffs of their equal protection rights.  The plaintiffs claim "a class-based, invidious discriminatory animus behind Everman's and Raitz's actions."  This discrimination includes "Everman's and Raitz's hatred and contempt toward" the plaintiffs because of the plaintiffs' "strong support and belief in returning farmland to its natural habitat."  (Doc. 1, ¶¶ 50, 52).

To establish a claim under § 1985(3), the plaintiffs must show:   (1) "two or more persons . . . conspire[d]"; (2) for the purpose of depriving the plaintiffs of their equal protection rights due to a racial or class-based animus, and that the conspirators; (3) committed an act "in furtherance of the object of such conspiracy"; (4) which "injured" the plaintiffs.  42 U.S.C. § 1985(3); *Maxwell v. Dodd*,

662 F.3d 418, 422 (6th Cir. 2011); *see also United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983).  The plaintiffs must allege "the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus."  *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999); *see Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993); *Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 765 (6th Cir. 2010) ("To sustain a claim under section 1985(3), a claimant must prove both membership in a protected class and discrimination on account of it.").  Furthermore, "'conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim.'"  *Center for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)).

The plaintiffs have failed to allege any facts indicating Everman and Raitz took actions which were motivated by any racially discriminatory animus or an animus based on national origin.  Rather, the plaintiffs claim the discriminatory animus is their "strong support and belief in returning farmland to its natural habitat."  (Doc. 1, ¶ 52).  This is not an animus based on race or national origin.  Therefore, the plaintiffs' personal belief farmland should be returned to its natural habitat does not establish the membership in a protected class which § 1985(3) requires.  *Bass*, 167 F.3d at 1050.  Accordingly, the defendants' motion to dismiss plaintiffs' first count for failure to state a claim under Rule 12(b)(6) is granted.

## B.  Constitutional Claims

In count two of their complaint, the plaintiffs assert their rights to freedom of speech, right to assemble, and right to petition the government to redress their grievances have been violated.  They contend they were deprived of liberty and property without due process and their private property was taken from them for public use without just compensation.  The plaintiffs state they

17

were intentionally treated differently from other similarly situated individuals, thus violating their equal protection and due process rights.

The plaintiffs argue for the first time in their response to the motion to dismiss that the availability of administrative remedies do not preclude the creation of a cause of action under *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  The plaintiffs do not discuss their theory of how a *Bivens* action is applicable to their constitutional claims, nor do the plaintiffs specifically address the merits of their constitutional claims.  Because I am confused by plaintiffs' response, I will examine the elements necessary to state a cause of action under each amendment in question to determine if the plaintiffs have stated a cause of action.

### C.  First Amendment Claim

Although not specified in their complaint, I assume the plaintiffs are raising a retaliation claim under the First Amendment.  The elements of a First Amendment retaliation claim are as follows:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (citations omitted).  "[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out[.]"  *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citations omitted).  The first element of a First Amendment retaliation claim is that the individual was engaged in protected conduct.  *See Ctr. for Bio–Ethical Reform, Inc.*, 477 F.3d at 821.  "It is well-settled that the freedom to criticize public officials and expose their wrongdoing is a fundamental First Amendment value, indeed, '[c]riticism of the government is at the very center of the constitutionally protected

18

area of free discussion.'" *Arnett v. Myers*, 281 F.3d 552, 560 (6th Cir. 2002) (quoting *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966)).

If a defendant can show he would have taken the same action in the absence of the protected activity, the defendant will defeat the claim. *Thaddeus–X*, 175 F.3d at 399. A plaintiff must point to specific, nonconclusory evidence reasonably linking the protected speech to the adverse action. *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003). "Temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim." *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) (citations omitted).

I presume the plaintiffs are asserting that because of the dispute they have had with the individual defendants, they have established a First Amendment claim. Based on the alleged facts, however, the plaintiffs have not satisfied all of the elements of *Thaddeus–X*. Although the plaintiffs have engaged in protected conduct by availing themselves of the administrative process regarding the contracts in question, they have failed to satisfy the second prong of the test.

Under the second element, the plaintiffs must allege "an adverse action was taken against [them] that would deter a person of ordinary firmness from continuing to engage in that conduct." *Thaddeus–X*, 175 F.3d at 394. Despite the alleged personal animosity between the plaintiffs and the individual defendants, the plaintiffs have continued to exercise their right to pursue their available administrative remedies. The plaintiffs' choice to exercise their appeal rights establishes that they are not deterred as a result of the defendants' alleged actions. *Id.* Therefore, the plaintiffs have failed to establish a First Amendment retaliation claim.

### D. Fifth Amendment Claim

Regarding the alleged Fifth Amendment violation, the plaintiffs contend they were deprived of liberty, their reputations were injured, and their property was taken without due process and just

19

compensation. "The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985). Thus, even after a taking, the government has not violated the Constitution until it refuses to compensate the owner. *Id.* at 194–95 & n13. A federal court may therefore hear a takings claim only after two criteria are met: (1) the plaintiff must demonstrate that he or she received a "final decision" from the relevant government, *id.* at 186-87; and (2) the plaintiff must have sought "compensation through the procedures the State has provided for doing so." *Id.* at 194.

This first element requires the taking to be "final." With a "physical taking," the taking itself is viewed as a final action because, once the property's value has been allegedly destroyed, there is nothing else to do. *See Coles v. Granville*, 448 F.3d 853, 862 (6th Cir. 2006). With a "regulatory taking," the finality "requirement follows from the principle that only a regulation that 'goes too far' results in a taking." *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 734 (1997) (quoting *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)). For the second requirement, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation . . . until [the property owner] has used the procedure and been denied just compensation." *Suitum*, 520 U.S. at 734 (quoting *Williamson*, 473 U.S. at 195) (observing that this "stems from the Fifth Amendment's proviso that only takings without just compensation infringe that Amendment").

Under the facts alleged, there has yet to be a "final" decision regarding the various contracts in question. The Department of Agriculture has established an administrative appeal procedure which the plaintiffs may use to contest the cancellation of the contracts in question. The plaintiffs have chosen to exercise the available procedure as to Contract #1183. The process has apparently not been completed as the dispute is in mediation. The process has not been exercised regarding Contracts #1192B and #1005. Therefore, under *Suitum*, the plaintiffs have failed to establish a Fifth

Amendment violation. *Id.*

E.  Fourteenth Amendment Claim

The Due Process Clause for the Fourteenth Amendment has both a substantive component

and a procedural component.  The substantive component protects those rights which are

"fundamental," meaning those rights that are "implicit in the concept of ordered liberty," *Palko v.*

*Connecticut*, 302 U.S. 319, 325 (1937), *overruled on other grounds by Benton v. Maryland*, 395 U.S. 784

(1969).  The Sixth Circuit has "recognized that the Fourteenth Amendment has a substantive due

process component that protects specific fundamental rights of individual freedom and liberty from

deprivation at the hands of arbitrary and capricious government action."  *Sutton v. Cleveland Bd. of*

*Educ.*, 958 F.2d 1339, 1350 (6th Cir. 1992) (quotation marks and citation omitted).

To establish a Fourteenth Amendment procedural due process violation, the plaintiffs must

establish three elements:

> (1) that they have a life, liberty, or property interest protected by the Due Process
> Clause of the Fourteenth Amendment to the United States Constitution, (2) that they
> were deprived of this protected interest within the meaning of the Due Process
> Clause, and (3) that the state did not afford them adequate procedural rights prior to
> depriving them of their protected interest.

*Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999) (citing *Zinermon v. Burch*, 494 U.S. 113, 125–26

(1990)).

Plaintiffs have failed to state whether they are alleging a substantive or procedural due

process claim.  Under either theory, the claim fails.  As for a substantive due process claim, the

terminations of the contracts in question are not arbitrary and capricious.  The facts establish the

contracts were terminated because the plaintiffs were allegedly in breach.  Further, no freedom or

liberty deprivation is established as a result of the termination of the contracts.  Therefore, I

conclude the plaintiffs have failed to allege a substantive due process claim.

21

What appears to be more applicable to plaintiffs' case is a procedural due process claim. But plaintiffs' allegations fail to satisfy this doctrine because the plaintiffs have been afforded adequate procedural rights given that the Department of Agriculture has an administrative appeal process available to challenge the termination of the contracts. Under *Hahn*, no procedural due process claim has been established. Therefore, the plaintiffs have failed to state a claim under the Fourteenth Amendment.

### VIII. Motion to Amend

In their response to the motion to dismiss, the plaintiffs state:

> The Complaint, in its present form, requests injunctive and mandamus relief against all Defendants, including the USDA and defendants Everman and Raitz in their official capacity. In addition however, Plaintiffs ideally should have included a Count III, explicitly requesting this Court to enforce the NAD decision. Therefore, Plaintiffs move for leave to amend their Complaint to add a Count III to the Complaint, requesting that this Court enforce the NAD decision pursuant to 7 U.S.C. § 6999, thereby leading to some or all of the relief requested in paragraph 2 of the prayer for relief on page 18 of Plaintiffs' present Complaint.

(Doc. 17, p. 6).

The record shows that the plaintiffs have never formally tendered an amended complaint to include a count three. Federal Rule of Civil Procedure 15 does not set forth specific requirements for accomplishing this procedure. *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 740 (6th Cir. 1999). The motion, however, is denied. As I have previously explained, the plaintiffs have not exhausted their available administrative remedies as to their contracts. In addition, despite not having fully exhausted their available administrative remedies, the substantive merits for the plaintiffs' claims do not establish a cause of action.

In addition, the record is not clear why Contract #1182 is in mediation if, as the plaintiffs claim, they have exhausted their available remedies as a result of the NAD decision. After the NAD

decision, the plaintiffs returned to the appeal process regarding this contract. If the plaintiffs believed the NAD decision was final, there was no reason to have engaged in the appeal process again.

Although the plaintiffs now claim the NAD decision is subject to judicial review, their request to seek such relief is untimely. Under 5 U.S.C. § 611, which sets forth the time restrictions applicable to § 6999, the plaintiffs had one year from the NAD decision to seek judicial review. The NAD issued its decision on August 24, 2011. The plaintiffs did not file their cause of action until April 19, 2013. Thus, the complaint was filed well beyond the one-year period set forth in § 611. For all these reasons, plaintiffs' proposed amendment would be futile.

IX. Conclusion

Accordingly, the defendants' motion to dismiss for lack of subject matter jurisdiction is granted as to all claims except those against Everman and Raitz in their individual capacities, which are dismissed for failure to state a claim. Should the Sixth Circuit conclude this Court does have subject matter jurisdiction as to Everman and Raitz in their official capacities and the Department of Agriculture, then the case is dismissed as to all issues for failure to state a claim upon which relief may be granted. Plaintiffs' motion to amend their complaint is denied.

So Ordered.

    s/ *Jeffrey J. Helmick*
United States District Judge